# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MAGDA[1] FIRESTONE,          )        CASE NO. 5:19-cv-1539

                 )

          PLAINTIFF,      )        JUDGE SARA LIOI

                 )

vs.                   )

                 )        MEMORANDUM OPINION AND

                 )        ORDER

CITIMORTGAGE, INC., et al.,   )

                 )

          DEFENDANTS.   )

Plaintiff Magda Firestone ("plaintiff" or "Mrs. Firestone") brought this federal action challenging a 2001 "consumer loan transaction" involving her late husband and seeking to "halt foreclosure" of her property located in Akron, Ohio and recover damages. (Doc. No. 1 (Complaint) ¶¶ 8, 11; *see id.* at 13[2] (Prayer for Relief).) Presently pending before the Court are dispositive motions filed by defendants CitiMortgage, Inc. ("CitiMortgage") and Kirkland Financial LLC ("Kirkland"). Specifically, the Court shall address herein CitiMortage's renewed motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Doc. No. 27), and Kirkland's motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). (Doc. No. 30.) Plaintiff filed an omnibus response to the motions (Doc. No. 31), and Kirkland and CitiMortgage each filed replies. (Doc. No. 32 (Kirkland Reply); Doc. No. 33 (CitiMortgage Reply).)

---

[1] While the case caption identifies plaintiff's first name as "Madga," elsewhere in the complaint and throughout the parties' briefing plaintiff's first name is spelled "Magda." For purposes of this opinion, the Court assumes the spelling adopted by the parties in their briefing is the correct spelling.

[2] Page number references are to the page numbers assigned to each individual document by the Court's electronic filing system, a practice recently adopted by the Court.

## I.  BACKGROUND

In 1999, plaintiff and her husband Steve Firestone ("Mr. Firestone") purchased the Akron property, upon which was a single-family dwelling, as "joint tenants with rights of survivorship." (Doc. No. 1 ¶ 14.) On June 28, 2001, the mortgage on the property was refinanced by means of a note executed in favor of defendant First NLC Financial Services, LLC ("First NLC"). (*Id.* ¶ 8, 14; Doc. No. 1-2 (Promissory Note).) Plaintiff contends First NLC and defendant Country Home Mortgage of Ohio ("Country Home"), "while acting as agents, mere straw entities, conduits, or pass through companies for CitiMortgage[,] used predatory lending practices to induce [Mr.] Firestone [] into refinancing [the couple's] home."[3] (Doc. No. 1 ¶ 14.) According to the complaint, these predatory lending practices included overvaluing the property, forging plaintiff's signature on the mortgage and other closing documents, misrepresenting the nature of the mortgage as a second mortgage, including in the note an unconscionable final balloon payment, and subsequently claiming that the note had been destroyed. (*Id.* ¶¶ 8, 13, 15, 16, 17, 20, 21, 23.)

On January 15, 2002, the refinanced mortgage and the note were assigned to CitiMortgage. (*Id.* ¶ 10.) Plaintiff alleges that CitiMortgage was aware, or should have been aware, of First NLC's fraudulent activities, and actively "encouraged, motivated, and rewarded" these activities. (*Id.* ¶ 22.) Between 2004 and 2008, CitiMortgage collected approximately $96,000 in payments from plaintiff on the refinanced mortgage. (*Id.* ¶ 29.) She claims that these payments were made, despite the fact that she owed no personal obligation on the note and mortgage. (*Id.* ¶¶ 28, 29.) Plaintiff also avers that her efforts to discover information regarding the nature of the note and mortgage were thwarted by CitiMortgage and First NLC. (*Id.* ¶¶ 25–29.)

---

[3] Mr. Firestone passed away on April 19, 2004. (Doc. No. 1 ¶¶ 8, 28.)

On February 20, 2008, CitiMortgage initiated a foreclosure action on the property in the Summit County Court of Common Pleas. (*Id.* ¶¶ 36–37; Doc. No. 28-1 (Docket for *CitiMortgage, Inc. v. Steve Firestone*, Case No. CV-2008-02-1570).) Plaintiff asserted counterclaims in this state court action and filed a motion to dismiss. (*See* Doc. No. 28-1.) On April 29, 2009, the state court granted CitiMortgage's motion for summary judgment and entered judgment against plaintiff in the amount of $267,795.63 with interest. (Doc. No. 1 ¶ 39; Doc. No. 1-4 (State Court Judgment Entry).) Plaintiff appealed, and the judgment was reversed and the case remanded. (Doc. No. 1 ¶ 40.) CitiMortgage voluntarily dismissed the case on September 7, 2012. (*Id.* ¶ 41.) On May 1, 2014, CitiMortgage filed a second foreclosure action in state court. (*Id.* ¶ 42; Doc. No. 28-2 (Docket for *CitiMortgage, Inc. v. Steve Firestone*, Case No. CV-2014-05-2242).) Plaintiff defended this second state court action, alleging that First NLC and CitiMortgage engaged in fraudulent and deceptive behavior. CitiMortgage ultimately assigned the note and mortgage to Kirkland on October 11, 2017, and Kirkland was substituted for CitiMortgage as the plaintiff in the second foreclosure action. (Doc. No. 1 ¶ 4; *see* Doc. No. 28-2.) Plaintiff alleges herein that Kirkland "is a mere conduit to which CitiMortgage" assigned the note "for the sole purpose of concealing its actions." (Doc. No. 1 ¶ 12.)

On July 5, 2019—while the second foreclosure action was still pending in state court—plaintiff filed suit in federal court. (*See* Doc. No. 1.) In her complaint, she raised claims for mortgage fraud, fraudulent concealment and fraudulent collection activities, fraudulent presentment and misrepresentation, and mail fraud and wire fraud. She also alleged violations of the Truth In Lending Act ("TILA"), the Fair Debt Collections Practice Act ("FDCPA"), and the Federal Racketeer Influence and Corrupt Organization Act ("RICO"). In addition to CitiMortgage

and Kirkland, plaintiff named First NLC and Country Home as defendants. (*See generally id.*)

On November 12, 2019, CitiMortgage filed a motion to dismiss the complaint or, alternatively, to stay the federal action pending disposition of the second state court foreclosure action. (Doc. No. 10.) On March 18, 2020, after the Court afforded Kirkland several extensions, Kirkland filed its answer and two counterclaims seeking declaratory relief. (Doc. No. 21.) The Court thereafter granted CitiMortgage's alternative motion to stay the federal action pending resolution of the second state court foreclosure action and denied without prejudice the motion to dismiss. (Doc. No. 23.)

A bench trial was conducted in state court before a magistrate in July 2019, at the conclusion of which the magistrate issued findings of fact and conclusions of law and provisionally granted judgment in favor of Kirkland. (Doc. No. 28-2 at 9.) On September 7, 2021, the state court judge overruled the objections to the magistrate's judgment and entered an order granting final judgment in favor of Kirkland. (Doc. 28-5.) In so ruling, the state court specifically held, in part, as follows:

> In summary, [Mrs. Firestone] argues that the mortgagor(s) allegedly engaged in fraudulent dealings either at the inception of the loan, throughout the loan process, or when the loan was sold/transferred to another entity. However, a review of the transcript in this matter does not suggest any credible evidence was elicited to support these claims. Moreover, the Magistrate found in her Findings of Facts that both Mr. Firestone and Mrs. Firestone signed the original mortgage back in 1999 and that it was filed with the Recorder. The Magistrate also found that Mr. Firestone had secured a refinanced loan from which he paid off a loan from a prior mortgage, paid off other debts and that some of the proceeds were given directly to the Firestones. There is no evidence that Mr. Firestone objected to the terms of the refinanced loan back in 2001, that the loan documents were not proper, or had any other issues with that loan. Indeed, the Firestones appeared to have utilized that money to their benefit.
>
> Any objection to this initial mortgage and filing with the Recorder should have been addressed many years ago pursuant to the Truth in Lending Act. That Act states

4

any claims of recession or other private causes of action need to be made within three years of closing. 15 U.S.C. 1635(t), 15 U.S.C. 1640(e). The same is true for the Refinanced mortgage that was secured by Mr. Firestone. Thus, the statute of limitations expired many years ago.

The Magistrate also found that both Mr. and Mrs. Firestone were listed as 'borrowers' for purposes of the mortgage that secured the Refinanced Loan and, that they both signed, initialed, all of the paperwork. Although M[r]s. Firestone offered Ms. Stemple to refute that she signed the documents, the Magistrate did not find the testimony actually established that fact. The Court agrees and will not substitute its judgment for that of the Magistrate. Likewise, the Magistrate did find credible the testimony of [Kirkland's] expert witness, a forensic handwriting expert, who 'authenticated' Mrs. Firestone's signature that appears on the mortgage documents. Finally, the Magistrate found that the testimony of the notary who actually witnessed and notarized Mrs. Firestone's signature to be credible and effectively established it was her signature on the mortgage documents. Notably, the Magistrate found no evidence of [f]raud.

(*Id*. at 2–3.) The state court issued a judgment and decree of foreclosure *in rem* on January 11, 2022. (Doc. No. 28-6.)

In light of the resolution of the second foreclosure case, the Court lifted the stay in this action and set the matter for a case management conference. (Non-document Order, 10/05/2021.) At defendants' request, the Court stayed the case management conference and permitted defendants to file dispositive motions. On March 7, 2022, CitiMortgage renewed its Rule 12(b) motion, arguing that the *Rooker-Feldman* doctrine divested this Court of jurisdiction to reverse a state court judgment and that plaintiff's claims are otherwise barred by the doctrine of res judicata. CitiMortgage also maintains that many of the claims are time-barred and that the fraud claims were plead without the requisite particularity. On March 14, 2022, Kirkland filed its Rule 12(c) motion, adopting the arguments advanced by CitiMortgage.

## II.  STANDARD OF REVIEW

CitiMortgage's jurisdictional argument is grounded in Rule 12(b)(1). The plaintiff bears the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion to dismiss on grounds of lack of subject matter jurisdiction. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (quotation marks and citation omitted); *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions can present a facial or factual challenge to the Court's subject matter jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2014) (citations omitted). A facial attack on the Court's subject matter jurisdiction alleged in the complaint "merely questions the sufficiency of the pleading." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When resolving a facial challenge, the Court accepts the factual allegations of the complaint as true and construes the complaint in a light most favorable to the non-moving party. *U. S. v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721–22 (6th Cir. 1999). If the motion presents a factual challenge, the Court may consider evidence outside the pleadings to determine if jurisdiction exists. *See Nichols*, 318 F.3d at 677. Further, there is no presumption of truthfulness in favor of the non-moving party. *A.D. Roe Co.*, 186 F.3d at 722.

CitiMortgage also seeks dismissal under Rule 12(b)(6), and Kirkland seeks the same relief under Rule 12(c). Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998)).

6

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Because many of plaintiff's claims—including RICO and mail/wire fraud—require proof of fraud as an element, plaintiff must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). "Rule 9(b) states that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Jackson v. Segwick Claims Mgmt. Servs., Inc*., 699 F.3d 466, 475 (2012) (quoting *Heinrich v. Waiting Angels Adoption Servs., Inc*., 688 F.3d 393, 403 (6th Cir. 2012)). "This includes alleging the 'time, place, and content' of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants

in the scheme, and 'the injury resulting from the fraud.'" *Id.* at 476 (quoting *Heinrich*, 688 F.3d at 403); *see Bender v. Southland Corp*., 749 F.2d 1205, 1216 (6th Cir. 1984) (upholding the district court's dismissal of RICO claims where the complaint failed to plead fraud with adequate particularity).

Rule 9's pleading requirement of particularity must be read in harmony with Rule 8's "policy of simplicity in pleading[.]" *Michaels Bldg. Co. v. Ameritrust Co., N.A*., 848 F.2d 674, 679 (6th Cir. 1988) (citing Fed. R. Civ. P. 8). Accordingly, courts should not be "too exacting" or "demand clairvoyance from pleaders" in determining whether the requirements of Rule 9(b) have been met. *Id*. at 681. Rather, "if the defendant has fair notice of the charges against him, [Rule 9(b)] is satisfied." *Shapiro v. Merrill Lynch & Co*., 634 F. Supp. 587, 594 (S.D. Ohio 1986); *see Williams v. Duke Energy Int'l, Inc*., 681 F.3d 788, 803 (6th Cir. 2012) ("'Rule [9] requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.'") (quoting *Michaels Bldg. Co*., 848 F.3d at 680).

In entertaining a Rule 12(b)(6) motion, a court may consider documents that are referred to in the pleadings and are integral to the claims without converting the motion to one for summary judgment. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini Oberlin Coll*., 259 F.3d 493, 502 (6th Cir. 2001)); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007) (citation omitted); *see also Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citation omitted). The Court may also take judicial notice of proceedings in another court without converting the motion into one for summary judgment. *Buck v. Thomas M. Cooley Law School*,

597 F.3d 812, 816 (6th Cir. 2010) (citation omitted).

### III.  DISCUSSION

#### A. *Rooker-Feldman* Doctrine

According to CitiMortgage, the complaint "must be dismissed because the *Rooker-Feldman* doctrine precludes the Court from granting [p]laintiff the relief she seeks." (Doc. No. 27 at 8.) The *Rooker-Feldman* doctrine is derived from two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a) and stands for the principle that lower federal courts have no jurisdiction to review state court judgments. *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923). Section 1257(a) was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). The *Rooker-Feldman* doctrine is based on the "negative inference" that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Id.* The doctrine, however, has a narrow application. The doctrine "does not bar federal jurisdiction 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)). Rather, "the doctrine applies only where a state-court loser initiates an action in federal district court, complaining of injury caused by a state court judgment, and seeks review and rejection of that judgment." *Id.* at 298–99 (citing *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009)).

While CitiMortgage argues that plaintiff's claims are "inextricably intertwined" with the second state court foreclosure action, the proper inquiry requires the Court to look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Kovacic*, 606 F.3d at 309 (applying the "source of the injury" inquiry and rejecting the "inextricably intertwined" standard).[4] "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick*; 451 F.3d at 393; *see Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 439 (6th Cir. 2006). As part of its inquiry, the Court should consider the plaintiff's requested relief. *Evans v. Cordray*, 424 F. App'x 537, 539 (6th Cir. 2011) ("The problem with the district court's analysis is that it determined the source of Evan's injury without reference to his request for relief.")

In the foreclosure context, the Sixth Circuit has repeatedly held that a suit premised on independently fraudulent conduct by a defendant, not comprising a direct attack on the judgment of possession, is not barred by *Rooker-Feldman*. *See, e.g., Veasley v. Fed. Nat'l Mortg. Ass'n (FNMA)*, 623 F. App'x 290, 295 (6th Cir. 2015) ("Veasley's complaint claims that the defendants engaged in independent acts, *i.e.* the assignment of a faulty mortgage in violation of [Michigan law], which gave rise to the state court's judgment of possession. *Rooker-Feldman* does not

---

[4] The Sixth Circuit originally endorsed the "inextricably intertwined" standard in *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *abrogated by Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006). But this standard proved difficult to apply, prompting the Supreme Court to clarify the doctrine's narrow reach in *McCormick*, 451 F.3d at 394 ("[Inextricably intertwined] was [the] exact language that was the source of the pre-*Exxon Mobil* woes as to the application of *Rooker-Feldman*.") In doing so, the Supreme Court implicitly repudiated inextricably intertwined as a standard. *Exxon Mobil*, 544 U.S. at 291–93. Following *Exxon Mobil*, the Sixth Circuit explained that in the context of *Rooker-Feldman* the phrase "only describes the conclusion that a claim asserts an injury whose source is the state court judgment[.]" *McCormick*, 451 F.3d at 393–95.

preclude jurisdiction" over these fraud claims); *Brown*, 206 F. App'x at 440 ("Brown's claim that the mortgage foreclosure decree was procured by fraud is not barred by *Rooker-Feldman*.") These cases stand in contrast with suits where the plaintiff seeks directly or by implication to overturn the state court judgment, which *Rooker-Feldman* does prohibit. *See, e.g., Givens v. Homecomings Fin.*, 278 F. App'x 607, 609 (6th Cir. 2008) ("Givens requests in his complaint . . . a temporary injunction that would 'enjoin Defendants from physically entering onto plaintiff's property' and that would 'dispos[e] . . . of any other civil or procedural action regarding the subject property.' Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker-Feldman* was appropriate.") (quoting complaint). That is true regardless of how "intertwined" the factual premise of the causes of action is with any dispositive facts contested in the state court action. *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) ("This situation was explicitly addressed by the *Exxon Mobil* Court when it stated that even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution to challenge the federal claim, not *Rooker-Feldman*.").

Here, plaintiff's claims are based on a variety of alleged wrongful acts committed by defendants before and during the state foreclosure proceedings. For instance, in her mortgage fraud claim, plaintiff alleges she was harmed by defendants' fraudulently obtaining the note by inducing Mr. Firestone to file a loan application, including in the note an unconscionable balloon payment, forging plaintiff's signature on various loan documents, and ultimately assigning the note to hide their wrongdoing. (Doc. No. 1 ¶¶ 15–23.) Even many of the allegations highlighted by CitiMortgage make clear that the source of plaintiff's injuries is not necessarily the foreclosure judgment itself but the alleged fraud associated with the judgment. (*See* Doc. No. 33 at 4–5 (citing

Doc. No. 1 ¶ 8 [complaining of a "forged mortgage"]; ¶ 9 [alleging defendants "engaged in a pattern and practice of illegal, corrupt, and unconscionable activities . . . with the express purpose of defrauding Mr. Steve Firestone into entering an unconscionable transaction"]; ¶ 12 ["CitiMortgage [] assigned the Note and Mortgage for the sole purpose of concealing its actions"]; ¶ 13 [noting that the remainder of the allegations in the complaint "illustrate[] a continuing course of conduct by CitiMortgage Inc." to engage in fraud and listing various fraudulent acts].) As such, plaintiff's allegations of fraud in connection with the state court foreclosure proceedings, "like those in *McCormick*, did not constitute 'complain[ts] of injuries caused by the state court judgments,' . . . because they do not claim that the source of [plaintiff's] alleged injury is the foreclosure decree itself. Instead, the claims concern the actions of [defendants] that preceded the decree." *Brown,* 206 F. App'x at 440 (finding fraud claims were not barred by *Rooker-Feldman*).

A review of plaintiff's requested relief confirms that her federal claims are not entirely foreclosed by *Rooker-Feldman*. *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) ("A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'") (quoting *Berry*, 688 F.3d at 299). While plaintiff alleges that she brings this federal action "to halt foreclosure" (*see* Doc. No. 1 ¶ 11), and she requests that defendants be enjoined from foreclosing on the property (*see id.* ¶ 60), her prayer for relief spans the gambit of available remedies, including "compensatory damages in an amount exceeding $200,000.00, actual damages, in addition to: statutory damages, civil penalties, equitable relief, punitive damages, cancellation, recission,[5] attorneys' fees, and injunctive relief[.]" (*Id.*, Prayer for

---

[5] As will be discussed in more detail *infra*, the recission plaintiff seeks is the recission of the loan to Mr. Firestone and not recission of the foreclosure decree. (*See* Doc. No. 1 ¶ 58.)

Relief, at 13.)

Accordingly, the *Rooker-Feldman* doctrine applies to the extent that plaintiff's complaint alleges that she was injured by the state court rulings. *See McCormick*, 451 F.3d at 393. But to the extent that plaintiff's complaint alleges other injuries having their source in the defendants' purported fraudulent conduct before and during the state-court foreclosure rulings, the *Rooker-Feldman* doctrines does not apply. *See id.*; *see Brown*, 206 F. App'x at 440.

### B. Res Judicata

Nevertheless, the Court need not sort through plaintiff's claims to determine which claims survive a *Rooker-Feldman* analysis because all of the claims are barred by *res judicata*. The doctrine of *res judicata* precludes plaintiff from litigating issues and claims that were decided by the state courts, as well as issues and claims that could, and should, have been asserted in the state court action.

Federal courts must give the same preclusive effect to a state court judgment as that judgment would receive in the state courts. *Abbott v. Mich.*, 474 F.3d 324, 330–31 (6th Cir. 2007) (citing 28 U.S.C. § 1738); *see Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). If plaintiff would be precluded from filing this case in state court based on the case already decided by the Summit County Court of Common Pleas, she cannot seek relief in this Court in order to bypass the state procedural bar. To determine the preclusive effect a prior state court judgment would have on the present federal action, the Court must apply the law of preclusion of the state in which the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984).

In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim

preclusion and issue preclusion. *State ex rel. Davis v. Pub. Emp. Ret. Bd*., 899 N.E.2d 975, 981–82 (Ohio 2008) (quotation marks and citation omitted). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *O'Nesti v. DeBartolo Realty Corp*., 862 N.E.2d 803, 806 (Ohio 2007) (citation omitted). Claim preclusion also bars subsequent actions whose claims "could have been litigated in the previous suit[.]" *Id*. "[C]laim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Hosp. Underwriting Grp., Inc. v. Summit Health Ltd*., 63 F.3d 486, 494 (6th Cir. 1995) (further citation omitted)). By contrast, issue preclusion, or collateral estoppel, prevents the "relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies[,] . . . even if the causes of action differ." *O'Nesti*, 862 N.E.2d at 806 (citation omitted).

An analysis of the governing factors demonstrates that all of plaintiff's claims are barred by claim preclusion. First, the foreclosure judgment was a prior final, valid decision on the merits by a court of competent jurisdiction. (*See* Doc. Nos. 28-5; Doc. No. 28-6.) Under Ohio law, a state court decree in foreclosure is a final judgment. *See In re Monas*, 309 B.R. 302, 306–07 (Bankr. N.D. Ohio 2004). Nevertheless, plaintiff disputes the finality of the state foreclosure decree on the grounds that she lodged an appeal in the Ninth District Court of Appeals. (Doc. No. 31 at 5; *see* Doc. No. 31-3 (Notice of Appeal, dated Feb. 10, 2022).) "The pendency of an appeal, however,

does not prohibit application of claim preclusion. The prior state court judgment remains 'final' for preclusion purposes, unless or until overturned by the appellate court." *Hapgood*, 127 F.3d at 494 n.3 (citing *Cully v. Lutheran Med. Ctr.*, 523 N.E.2d 531, 532 (1987) (collecting cases)). And, in any event, on March 30, 2022 the court of appeals dismissed plaintiff's appeal upon her "failure to respond to a court order." (Doc. No. 32 at 5 (Journal Entry).) The first factor is met.

The Court also finds that the second factor is met. While plaintiff argues that CitiMortgage "is not a party to the second foreclosure" action (Doc. No. 31 at 5), she forgets that the second factor is satisfied if the prior action involved the same parties *or their privies. See Hapgood*, 127 F.3d at 493. "Privity' is a *succession* of interest or relationship to the same thing." *Metalworking Mach. Co., Inc. v. Fabco, Inc.*, 477 N.E.2d 634, 637 (Ohio Ct. App. 1984) (emphasis in the original) (citation omitted). "A party is in 'privity' with another if it succeeds to an estate or an interest formerly held by the other, or where a party is so identified in interest with another that the party represents the same legal right." *Jarvis v. Wells Fargo Bank*, No. 09 CO 16, 2010 WL 2749602, at *8 (Ohio Ct. App. June 30, 2010) (citations omitted). As the successor-in-interest on the note and mortgage, Kirkland is in privity with CitiMortgage. *See EMC Mortg. Corp. v. Jenkins*, 841 N.E.2d 855, 863 (Ohio Ct. App. 2005) ("An assignee of an interest in a promissory note and mortgage is in privity with its assignor for purposes of res judicata.").

The third element requires that all claims were litigated or could have been litigated in the prior action. "The scope of claims covered by this prong is quite broad" and prevents "not only relitigat[ion of] a claim previously adjudicated; it also precludes litigat[ion of] a claim or *defense* that should have been raised, but was not, in the prior suit." *Frazier v. Matrix Acquisitions, LLC*, 873 F. Supp. 2d 897, 902 (N.D. Ohio 2012) (quotation marks and citation omitted) (emphasis in

original). Under Ohio law, "the question is not what claims [the plaintiff] opted to include . . . but what claims [she] could have included." *Trafalgar Corp. v. Miami Cnty. Bd. of Cnty. Comm'rs*, No. 3:05-cv-84, 2006 WL 689112, at *8 (S.D. Ohio Mar. 14, 2006). It is clear from the trial court's judgment that many of the issues relating to the alleged fraud of defendants—including the purported forgery of plaintiff's signature on loan and mortgage documents—were raised by plaintiff in the second foreclosure action. (*See* Doc. No. 28-5 at 2–3.) To the extent that any of the claims herein raise issues that were not raised in defense of the second foreclosure action, plaintiff has not argued nor established that she was precluded from raising them in state court. Indeed, courts have held that causes of action similar to plaintiff's claims could have been brought in prior foreclosure proceedings. *See, e.g., Hines v. Franklin Sav. & Loan*, No. 1:09-cv-914, 2011 WL 882976, at *1, *5 (S.D. Ohio Jan. 31, 2011) (concluding that plaintiff's TILA and FDCPA claims "could and should have been presented in the state court foreclosure action"), *report and recommendation adopted by* 2011 WL 886128 (S.D. Ohio Mar. 10, 2011). The third factor is satisfied.

Under Ohio law, the fourth factor—arising from the same transaction or occurrence—is satisfied if the two actions arise from a "common nucleus of operative facts." *Hapgood*, 127 F.3d at 494. Plaintiff believes that this fourth factor is not met because the foreclosure action arises out of the mortgage, while the present federal action arises out of her dealings with defendants. (Doc. No. 31 at 5.) However, the same operative facts govern the issues in the federal and the state court proceedings: the facts alleged in plaintiff's federal complaint in support of her claims of mortgage fraud, TILA, FDCPA, RICO, and mail and wire fraud—that defendants engaged in a fraudulent course of dealings to first secure and then hide the true nature of the refinanced mortgage—are the

same facts underlying plaintiff's defenses in the second state court foreclosure action. *See, e.g., King v. Bank of Am. NA*, No. 3:18-cv-2248, 2019 WL 3292184, at \*8 (N.D. Ohio June 19, 2019) (barring plaintiffs' fraud/misrepresentation, civil conspiracy, OCPA, and RICO claims, which were "all based on Plaintiffs' allegations regarding improper indorsement or assignment of the Note/Mortgage and the foreclosure proceedings that followed"). Because the claims herein arise from the same common nucleus of operative facts, the fourth element of claim preclusion is also satisfied.

As all of the factors are met, claim preclusion bars plaintiff from relitigating the claims from her state court foreclosure lawsuit in this federal action, and dismissal of plaintiff's claims is appropriate for this reason alone.

### C. Fraud Claims

However, plaintiff's claims also suffer from a variety of pleading and other deficiencies. The Court begins with plaintiff's mortgage fraud claims in Counts One, Two, and Three. "Under Ohio law, a claim for fraud is governed by a four-year statute of limitations." *Foster v. Foster*, 113 N.E.3d 150, 158 (Ohio Ct. App. 2018) (citing *Riddick v. Taylor*, 105 N.E.3d 446, ¶ 11 (Ohio 2018) (citing Ohio Rev. Code § 2305.09)). Because the discovery rule applies to claims for fraudulent misrepresentation, a cause of action accrues and the limitations period begins when the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered the fraud. *Riddick*, 105 N.E.3d at 451, ¶ 12 (quotation marks and citations omitted).

In Count One, plaintiff relies on the conduct, beginning with the loan to Steve Firestone, that allegedly occurred in 2001 or 2002. (*See* Doc. No. 1 ¶¶ 8–10, 14–18.) Count Two is based on alleged conduct occurring between 2004 and 2008 and relating to the payments on the note. (*Id.*

¶¶ 25–34.) All of this conduct occurred well outside the four-year window set forth in Ohio Rev. Code § 2305.09.

In Count Three, plaintiff alleges that CitiMortgage engaged in fraud by initiating the two foreclosure actions in 2008 and 2014, and, with respect to the second action, alleged that CitiMortgage misrepresented the nature of plaintiff's interest in the mortgaged property. (Doc. No. 1 ¶¶ 36–44.) All of these actions occurred outside the limitations period. The only factual allegation of wrongdoing that occurred within the statutory window related to the 2016 and 2017 assignments of the loan. (*Id*. ¶¶ 45–46.) "However, it is well settled in Ohio that mortgage debtors do not have standing to challenge mortgage assignments." *Wells Fargo Bank v. Watson*, 41 N.E.3d 79, 86 (Ohio Ct. App. 2015) (citation omitted); *Deutsche Bank Nat'l Trust Co. v. Whiteman*, No. 12AP-536, 2013 WL 1749665, at *4 (Ohio Ct. App. April 23, 2013) (finding mortgagor lacked standing to challenge the validity of the assignments of the note and mortgage and the use of "robo-signers") (citations omitted).

Plaintiff urges the Court to find equitable tolling of the statute of limitations under the doctrines of unclean hands and fraudulent concealment. (*See* Doc. No. 31 at 6–8.) The unclean hands doctrine prevents a party from asserting an equitable claim or defense where the party has acted in bad faith. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814, 65 S. Ct. 993, 89 L. Ed. 1381 (1945). "A statute of limitations defense, however, is a *legal* defense, not an equitable one." *Ratliff v. Ohio State Univ*., No. 2:19-cv-4746, 2021 WL 7186198, at *4 (S.D. Ohio Sept. 22, 2021) (emphasis in original) (citing, among authority, *Grover by Grover v. Eli Lilly & Co*., 33 F.3d 716, 719 (6th Cir. 1994) (describing the statute of limitation as an "absolute legal defense"). Accordingly, it cannot be defeated by an unclean hands argument. *Id*. ("Because

18

the statute of limitations is a legal, not equitable defense, the clean hands doctrine is . . . inapplicable). As for the claims of fraudulent concealment, plaintiff relies on the series of assignments and transfers designed, she believes, to hide defendants' fraudulent behavior. (*See* Doc. No. 31 at 6.) Again, plaintiff lacks standing to challenge these transactions. *See Wells Fargo Bank*, 41 N.E.3d at 86. Counts One, Two, and Three are, therefore, time barred.

### D.  TILA Claim for Damages

Count Four alleges that defendants violated TILA by failing to provide the required statutory disclosures. Specifically, she points to the 2001 loan, noting that she was not present at the closing and received none of the disclosures required under TILA. (Doc. No. 1 ¶¶ 52–53.) TILA provides, in pertinent part, "any action under this section may be brought in any United States district court, or in any court of competent jurisdiction, within one year from the date of the occurrence of the violation[.]" 15 U.S.C. § 1640(e). "[A] credit transaction which requires disclosures under [TILA] is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs. If the disclosures are not made, this violation of [TILA] occurs, at the latest, when the parties perform their contract." *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973).

The performance of the loan contract occurred in 2001, and, as previously noted, plaintiff lacks standing to challenge the assignments and transfers of the loan to support a claim of equitable tolling. Additionally, to the extent plaintiff relies on CitiMortgage's corporate structure to support equitable tolling (*see* Doc. No. 31 at 6), plaintiff's speculation that CitiMortgage manipulated its corporate structure through a series of legal business transactions in order to hide the loan to her late husband is insufficient to warrant such tolling. *See Hamilton Cnty. Bd. of Comm'rs v. N.F.L.*,

491 F.3d 310, 319 (6th Cir. 2007) (plaintiff must offer some affirmative act of fraudulent concealment); *see also Twombly*, 550 U.S. at 555 (factual allegations may not be steeped in speculation); *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (The court is not "bound to accept as true a legal conclusion couched as a factual allegation.") Count Five is time-barred.[6]

### E.  FDCPA Claim

In Count Six, plaintiff alleges that CitiMortgage violated the FDCPA by "repeatedly engag[ing] in false and misleading representations and unfair practices" by misleading her "as to the character and legal status of the note and mortgage[.]" (Doc. No. 1 ¶¶ 64–65.) In support of her claim, she alleges that CitiMortgage is a "creditor and a debt collector as defined in [the FDCPA]." (*Id.* ¶ 63.).

However, CitiMortgage does not meet the statutory definition of a "debt collector," which is any person "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition specifically excludes the creditor or the person to whom the debt is owed. § 1692a(6)(F)(ii). Here, CitiMortgage is alleged to have attempted to collect on the note it owned by means of the foreclosure actions. In doing so, CitiMortgage was acting as a creditor and not a debt collector. *See Montgomery v. Huntington*

---

[6] Count Six—seeking recission under TILA—is also untimely. As the Sixth Circuit noted in *McCoy v. Harriman Util. Bd.*, 790 F.2d 493, 496 (6th Cir. 1986), while a right to damages under the TILA is barred after one year under § 1640(e), an obligor retains the right to rescind a credit transaction for a failure to make the statutory disclosures for three years under § 1635. Plaintiff's federal TILA claim for recission was not brought within three years of the loan, and, for the same reasons already discussed above, plaintiff is not entitled to equitable tolling.

*Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (creditor could not be a debt collector under the FDCPA where it was collecting on the debt owed it). For this reason, courts have consistently held that mortgage holders are not "debt collectors" under the FDCPA. *See, e.g., McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 592 (E.D.N.Y. 2005); *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003); *RBS Citizens, N.A. v. Zigdon*, No. 93945, 2010 WL 2961534, at *5 (Ohio Ct. App. July 29, 2010) ("creditors and mortgage service companies are not debt collectors and are not subject to liability under the FDCPA"). Because CitiMortgage does not meet the statutory definition of a "debt collector," plaintiff's FDCPA claim is subject to dismissal.[7]

### F. RICO and Mail Fraud/Wire Fraud Claims

Finally, the Court finds that plaintiff's claims involving RICO and mail fraud/wire fraud (Counts Seven and Eight, respectively) are subject to dismissal under Rule 12(b)(6) for failure to plead with the requisite particularity demanded by Fed. R. Civ. P. 9. In Count Seven, plaintiff alleges that defendants "conduct[ed] their affairs through a pattern of corrupt activity in writing of illegal loans, fraud, fraudulent presentment, fraudulent concealment and the collection of unlawful debt." (Doc. No. 1 ¶ 67.) In Count Eight, she generally cites to paragraphs 9 through 49 of the complaint and further alleges that defendants "did use the United States Postal Service and/or other electronic means in violation of 18 U.S.C. § 1341 and 1343." (*Id.* ¶¶ 72–73.)

---

[7] Additionally, plaintiff's FDCPA is untimely as it was not brought within the one-year statute of limitations. *See Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 273 (6th Cir. 2016) ("Civil actions under the Fair Debt Collection Practices Act may be brought 'within one year from the date on which the violation occurs.'") (quoting 15 U.S.C. § 1692k(d)).

Generally, to comply with Rule 9(b), a plaintiff alleging RICO or fraudulent misrepresentations must "allege the time, place, and content of the alleged misrepresentations[.]"[8] *U.S. ex rel. Bledsoe v. Cmty. Health Sys. Inc*., 501 F.3d 493, 504 (6th Cir. 2007) (quotation marks and citations omitted); *see Frank v. Dana Corp*., 547 F.3d 564, 570 (6th Cir. 2008) (To meet Rule 9(b) pleading requirements, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (quotation marks and citation omitted). Similar particularity is required when pleading mail and/or wire fraud. *See Heinrich,* 668 F.3d at 404 (citation omitted).

Through the allegations in the complaint, plaintiff alleges a combination of misrepresentations and concealments by defendants that were, she believes, designed to hide from her the true nature of the loan and refinanced mortgage. But even when a plaintiff is pleading fraudulent concealment, she must still meet the particularity requirements in Rule 9(b). Specifically, a pleader must still identify "the who, what, when, where, and how" of the alleged omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc*., 683 F.3d 239, 256 (6th Cir. 2012) (quotation marks and citation omitted). In order to satisfy this pleading requirement, a plaintiff must allege "(1) precisely what was omitted; (2) who should have made the representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id*.

---

[8] Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich*, 668 F.3d at 404 (quotation marks and citation omitted). "The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud." *Id*. (citation omitted).

Here, plaintiff's vague allegations of misrepresentations and omissions fail to meet the Rule 9(b) pleading standard. For example, in paragraph 28, plaintiff alleges that "[s]ubsequent to [Mr. Firestone's] death, CitiMortgage Inc. fraudulently concealed the legal fact that [plaintiff] had no personal obligation on the note[.]" (Doc. No. 1 ¶ 28.) Such an allegation falls well short of satisfying "the who, what, when, where, and how" needed to establish fraudulent concealment. Other allegations of concealment are pled with the same inattention to particularity. (*See, e.g., id*. ¶¶ 13 [laundry list of fraudulent acts taken at unknown times by unknown individuals], 15 [unknown individual "induced" Mr. Firestone at an unknown time and by unidentified misrepresentations or concealments to agree to the loan].) Counts Seven and Eight also fail because they do not meet the Rule 9(b) pleading requirements.[9]

---

[9] For these same reasons, to the extent that plaintiff attempts to rely on fraudulent concealment to equitably toll the various statutes of limitations applicable to her claims, the effort falls short of entitling her to tolling.

23

## IV.    CONCLUSION

Ultimately, the Court finds that all of the claims in plaintiff's complaint are barred by the doctrine of *res judicata*. Additionally, the claims are fatally flawed because they are time-barred and/or suffer from other pleading deficiencies. Accordingly, for the foregoing reasons, defendants' dispositive motions (Doc. Nos. 27, 30) are granted, and plaintiff's claims are dismissed.[10] This case is closed.

**IT IS SO ORDERED**.

Dated: August 12, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] Given that Kirkland's counterclaims merely seek declarations that Kirkland holds a valid lien on the property and that plaintiff is not entitled to rescind the loan under TILA, its counterclaims are rendered moot by the Court's dismissal of plaintiff's claims. *See Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, No. 86-5490, 1987 WL 37488, at *3 (6th Cir. 1987) (Under the "mirror image" rule, a declaratory judgment complaint should be dismissed when it "merely restates the issues as a 'mirror image' to the complaint" because it "serves no purpose."); *see, e.g., Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-cv-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006) (in real estate fraud action, "mirror image" declaratory judgment counterclaims were properly dismissed because they would be rendered moot if plaintiffs did not prevail on the claims in their complaint).